UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE CONERLY CORPORATION, ET                    CIVIL ACTION
AL.

VERSUS                                         NO: 08-813

REGIONS BANK, ET AL.                           SECTION: R(5)


**ORDER AND REASONS**

Before the Court are defendants Regions Bank and Bill Carroll's motions to dismiss for failure to state a claim under Fed. R. of Civ. P. 12(b)(6).  For the reasons stated below, their motions are GRANTED in part and DENIED in part.

**I.   Background**

In the summer of 2002, defendant The Conerly Corporation ("Conerly Corp.") entered into a construction contract with Beechgrove Redevelopment Phase II, LLC ("Beechgrove")for renovation of certain apartment units in Westwego, Louisiana.  To finance the project, Beechgrove obtained a secured loan from AmSouth Bank, predecessor to Regions Bank (collectively

"AmSouth/Regions").

The crux of this dispute concerns certain representations allegedly made to Conerly Corp. by defendant Bill Carroll, an employee of AmSouth/Regions.  According to plaintiffs, on several occasions Carroll threatened to replace Conerly Corp. if work was not completed faster.  Carroll also allegedly promised that all of the work done for Beechgrove that was approved by the architect would be paid in full.  Allegedly relying on Carroll's word that AmSouth/Regions would make sure that all of the completed construction would be compensated, Conerly Corp. continued to work and incur expenses.

In March 2007, Carroll informed Conerly Corp. that no more payments would be forthcoming, apparently because Beechgrove defaulted on its loan.  Because payments from Beechgrove ceased, Conerly Corp.'s bonding company, the Insurance Company of Pennsylvania (ISCOP), advanced Conerly Corp. money to complete the project.  Soon after, AmSouth/Regions foreclosed on the Beechgrove properties.

Conerly Corp., it's president Jessie Conerly, and its assignee, ISCOP, have brought this suit for damages against Carroll and vicariously against AmSouth/Regions for breach of contract, bad faith breach of contract, negligence and negligent misrepresentation, unjust enrichment, detrimental reliance and

intentional misrepresentation.[1]  Defendants have brought this
12(b)(6) motion to dismiss for failure to state a claim.

## II.  Legal Standards

## A.   Applying Louisiana Law

Because jurisdiction is based on diversity of citizenship,
Louisiana law applies to the substantive issues before the Court.
*See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In
Louisiana, the sources of law are legislation and custom. *Shaw
Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th
Cir. 2004). These authoritative or primary sources of law are to
be "contrasted with persuasive or secondary sources of law, such
as [Louisiana and other civil law] jurisprudence, doctrine,
conventional usages, and equity, that may guide the court in
reaching a decision in the absence of legislation and custom."
*Id.* (quoting La. Civ. Code art. 1). In Louisiana, "courts must
begin every legal analysis by examining primary sources of law:
the State's Constitution, codes, and statutes." *Id.* (quoting
*Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169,

---

[1]In addition, plaintiffs originally asserted a claim under
the Louisiana Unfair Trade Practices Act, but do not now "oppose
dismissal upon consideration of defendants' arguments." (R. Doc.
20 at 2).  This claim is dismissed.  *See In re Ford Motor Co.
Bronco II Products Liability Litigation*, No.  MDL-991, 1995 WL
491155, at  *4 (E.D.La. 8/15/1995).

174 (5th Cir. 1999)).

**B.    12(b)(6) Motions to Dismiss**

In considering a motion to dismiss, a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 127 S.Ct. at 1965 (quotation marks, citations, and footnote omitted).

**III.  Analysis**

**A.    Defendants' Defenses**

Defendants' assert various state law defenses, each of which they claim is dispositive of one or more of plaintiffs' claims. These are addressed first.

    *i.   Louisiana Credit Agreement Statute*

Defendants assert that all of plaintiffs' claims are barred by the Louisiana Credit Agreement Statute, because there was no written agreement between plaintiffs and Carroll or AmSouth/Regions.  *See Jesco Construction Corp. v. Nationsbank Corp.*, 830 So.2d 989, 992 (La. 2002)(holding that Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements).  "The Credit agreement statutes embody legislative reaction to the surge of lender liability litigation in the late 1980s and were enacted primarily to limit the most frequent lender liability claims, which include assertions of a breach of oral commitments to lend, to refinance or to forbear from enforcing contractual remedies by instituting a so-called statute of frauds and requiring such agreements to be in writing to be enforceable."  *King v. Parish Nat'l Bank,* 885 So.2d 540, 546 (La. 2004)(citation and quote omitted)(holding that credit agreement statute precludes all claims, including bad faith claims, based on oral credit agreements).  The statute states that a "debtor shall not maintain an action on a credit agreement unless the agreement is in writing."  La. Rev. Stat. Ann. § 6: 1122 (2005).  "Credit Agreement" is defined as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial

5

accommodation." *Id.* at 1121(1).  Thus, the statute precludes suits by borrowers against lenders when there is no writing evidencing their agreement.

A credit agreement clearly existed between AmSouth/Regions and Beechgrove, but Conerly Corp. was not a party to that agreement.  In addition, Conerly Corp. was not a "debtor" who had a "credit agreement" with AmSouth/Regions under the statute. Whatever understanding existed between Conerly Corp. and defendants, it was not "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit."  La. Rev. Stat. Ann. § 6: 1121(1)(2005).  Plaintiffs allege that defendants agreed to pay for work performed, not to lend them money. Defendants assert that Carroll's promise to pay plaintiffs was a "financial accommodation," and thus a "credit agreement," but offer no definition of that term (which is undefined in the statute) and fail to point to any case applying the statute to situations like this one.  *See Keenan v. Donaldson,* 529 F.3d 569, 575 (5th Cir. 2008)(noting that "[n]o Louisiana Supreme Court case has applied the law outside of the traditional debtor-creditor relationship").

The one case defendants cite as containing an analogous "financial accommodation," *Knight v. Magee*, 835 So.2d 636, 639 (La. Ct. App. 2002), is inapposite.  *Knight* applied the Louisiana

6

Credit Agreement Statute to an oral agreement by a creditor to forbear collection of sums due on a mortgage note. *Id.* But such forbearances are explicitly acknowledged as "credit agreements" by the statute, La. Rev. Stat. Ann. § 6: 1121(1), and do not resemble the alleged agreement between plaintiffs and defendants. Reading all inferences in favor of the plaintiffs, Conerly Corp. argues that defendants are liable for performance rendered under a contract for services, rather than as a lender in a lender liability suit.

The Fifth Circuit recently cautioned against extending the Louisiana Credit Agreement Statute to situations outside the primary purpose of the statute, which is to limit lender liability suits based on oral agreements. *Keenan*, 529 F.3d at 577. That purpose is not implicated here, and the Court finds that the statute does not bar plaintiffs' claims.

*ii. Louisiana Revised Statute § 6:291*

Defendants argue that plaintiffs' claims for negligence and negligent misrepresentation against Carroll are barred under La. Rev. Stat. § 6:291(B), because plaintiffs' have failed to allege gross negligence. The text of La. Rev. Stat. § 6:291(B) states:

> A director or officer of a bank or bank holding company
> shall not be held personally liable to the corporation or
> the shareholders thereof for monetary damages unless the
> director or officer acted in a grossly negligent manner
> as defined in R.S. 6:2 or engaged in conduct which

7

> demonstrates a greater disregard of the duty of care than gross negligence, including intentional tortious conduct or intentional breach of his duty of loyalty.

*Id.* Section 291(B), by its terms, does not apply to this case. The statute sets the standard of care for suits against bank officers by shareholders or the corporate entity.  It says nothing about suits by third-parties, such as plaintiffs, that are neither shareholders nor suing on behalf of AmSouth/Regions.

Nonetheless, defendants argue that La. Rev. Stat. § 6:291(B) sets the standard for *all* negligence suits against bank officers, because § 6:291(E) provides:  "Notwithstanding any other law to the contrary...the provisions of this Section shall be the sole and exclusive law governing the relation and liability of directors and officers to their bank or holding company or to shareholders thereof or to any other person or entity." Defendants rely on the last five words of this provision to contend that the statute's gross negligence standard governs a bank officer's liability to "any other person or entity," including plaintiffs.  Defendants cite no case, however, that supports such a broad application of § 6:291(B).  To the contrary, *every* case citing § 6:291(B) involve a suit brought by a party specifically listed in § 6:291(B), such as a shareholder or other equity holder like the Federal Deposit Insurance Company.  *See FDIC v. Barton*, 233 F.3d 859 (5th Cir. 2000); *FDIC*

*v. Abraham*, 137 F.3d 264 (5th Cir. 1998); *FDIC v. Mijalis*, 15 F.3d 1314 (5th Cir. 1994); *RTC v. Barton*, 81 F.Supp.2d (E.D.La. 1999)(*vacated by Barton*, 233 F.3d 859); *FSLIC v. Shelton*, 789 F.Supp. 1360 (M.D.La. 1992)(Federal Savings and Loan Insurance Corporation, then FDIC); *Olinde v. 400 Group*, 686 So.2d 883 (La. Ct. App. 1996)(suit by shareholders).  Without any case law to support applying § 6:291(B) to persons or entities other than those specifically enumerated in the statute's text, namely shareholders and the entity the officer serves, the Court finds the statute inapplicable to the plaintiffs in this case.[2]

     *iii.  Carroll's Liability for Acts in Commercial Context*

     Defendants also argue that Carroll cannot be held personally liable for any acts committed in the course of his employment for AmSouth/Regions.  Louisiana Civil Code article 3013 "prohibits an agent from being held liable to a person with whom he contracts, unless he has bound himself personally or he has exceeded his authority without disclosure."  *Orleans Parish School Board v. Gegg*, 708 So.2d 425, 429 (La. Ct. App. 1998)(*citing* La. Civ. Code. art. 3013).  In addition, "[o]fficers, employees and agents owe no duty to third parties for their negligent acts and

---

    [2] Because the Court finds that La. Rev. Stat. § 6:291 is not applicable, defendants' request for attorneys' fees under La. Rev. Stat. § 6:291(F) is denied.

omissions in a commercial context." *Korson v. Independence Mall I*, 595 So.2d 1174, 1178 (La. Ct. App. 1992). *See also Unimobil 84 v. Spurney*, 797 F.2d 214 (5th Cir. 1986), *B-G&G Investors VI, LLC v. Thibaut HG Corp.,* 985 So.2d 837, 841–42 (La. Ct. App. 2008) and *Cameron Equipment Co. v. Stewart & Stevenson Ser*vices, 685 So.2d 696, 700 (La. Ct. App. 1996). *But cf. Canter v. Koehring Co,* 283 So.2d 716, 721–22 (La. 1973)(recognizing that corporate officers may be liable for tortious acts resulting in physical injury).  Officers may, however, be liable in their personal capacity for fraudulent acts committed in the course of their employment.  *Unimobil 84*, 797 F.2d at 217; *Alvis v. Cit Group Equipment Financing*, 867 So.2d 102, 104 (La. Ct. App. 2004).

Plaintiffs cite the Louisiana Supreme Court's decision in *Fryer v. Westside Habilitation Center*, 479 So.2d 883, 890 (La. 1985), for the proposition that an employee is "personally liable for his negligent omissions" when "he is the officer responsible for the corporation's acts in a particular transaction."  *Fryer* is a personal jurisdiction case under the Louisiana Long-Arm Statute and is not controlling here.  More importantly, Louisiana lower courts have not interpreted *Fryer* to effect the sea-change in Louisiana officer liability law that plaintiffs claim. Plaintiffs have cited three cases, *Travel Resources, Inc. of Louisiana v. Whitney Nat. Bank*, No. 89-2264, 1990 WL 19834 (E.D.

La. 2/26/1990), *Secore, Inc. v. Boes Iron Works*, 562 So.2d 1154
(La. Ct. App. 1990), and *Hemphill-Kunstler-Buhler v. Davis*
*Wholesale Electronics Supply Co.,* 516 So.2d 402 (La. Ct. App.
1988), that rely on *Fryer* to hold an officer liable for torts
committed in the commercial context, but these cases are
factually distinct from this one. *Travel Resources*, 1990 WL
19834 at *3, involved a bank officer's fiduciary duty to its
customer, a relationship not implicated here.  In *Secore*, 562
So.2d at 1156, the court held that an officer was liable for
conversion of auction property where he was "directly involved in
the commission of a tort-conversion," and it was unclear whether
defendant was acting as a sole-proprietor or on behalf of a
corporate entity when the tort was committed.  Here, it was clear
that Carroll was acting in his corporate capacity, on behalf of
AmSouth/Regions, at all times.  In *Hemphill-Kunstler-Buhler,* 516
So.2d at 404, the court held that an officer owed a duty under
*Canter v. Koehring*, 283 So.2d 716 (La. 1973), not to
intentionally interfere with an auction of the company's assets.
Other Louisiana lower courts, and the Fifth Circuit, however,
have held that officer liability under *Canter* is limited to cases
of physical injury, a factor not present in this case.  *See*
*Unimobil 84, Inc.*, 797 F.2d at 217 (*adhering to Fine Iron Works*

11

*v. Louisiana World Exposition, Inc*., 472 So. 2d 201 (La. Ct. App. 1985)).  In any event, to the extent that these cases hold an officer personally liable for non-fraudulent acts done in a commercial context, they are contrary to the rule applicable in Louisiana as stated by the majority of courts applying Louisiana law. *See B-G&G Investors VI, LLC v. Thibaut HG Corp.,* 985 So.2d 837, 841-42 (La. Ct. App. 2008), *Cameron Equipment Co. v. Stewart & Stevenson Ser*vices, 685 So.2d 696, 700 (La. Ct. App. 1996), *Goodwin v. Agrilite, Inc.*, 643 So.2d 249, 253 (La. Ct. App. 1994), *Korson v. Independence Mall I*, 595 So.2d 1174, 1178 (La. Ct. App. 1992) and *Fine Iron Works v. Louisiana World Exposition, Inc.*, 472 So. 2d 201, 203 716, 721-22 (La. Ct. App. 1985).  *See also Unimobil 84 v. Spurney*, 797 F.2d 214 (5th Cir. 1986), *Jade Marine, Inc. v. Detroit Diesel Corp.*, No. 02-2907, 2002 WL 31554012 at *2-3 (E.D.La. 11/15/2002) and *Grimaldi Construction, Inc. v. Robinson*, No. 96-0484, 1997 WL 191494 at *2 (E.D.La. 4/18/1997)(all applying Louisiana law).

At no point do plaintiffs allege that Carroll acted outside the scope of his employment, and plaintiffs have not alleged facts indicating that Carroll bound himself personally.  Rather, plaintiffs' complaint repeatedly alleges that Carroll is an "employee or agent" of AmSouth/Regions who acted "on behalf of AmSouth/Regions."  Plaintiffs allege that "Carroll was fully

authorized by AmSouth/Regions Bank to act on its behalf in all respects to Beechgrove Phase II, including dealing with the property owners." The only allegation indicating that Carroll acted beyond the scope of his authority or bound himself personally is plaintiffs' statement that Carroll "breach[ed]...an oral contract, both personally and on behalf of AmSouth Bank." But this isolated statement is not enough to state a claim against Carroll. Plaintiffs must allege "specific facts, rather than conclusory allegations." *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005). Here, the allegations overwhelmingly state that Carroll was within scope of his employment, "on behalf of AmSouth Bank," when dealing with plaintiffs, and AmSouth/Regions has admitted as much by joining Carroll's motions arguing that he should be dismissed on these grounds. As such, all of plaintiffs' claims against Carroll, with the exception of their claim for intentional misrepresentation, are dismissed.

 *iv. Claims Concerning Jessie Conerly*

 Defendants assert that plaintiffs have failed to plead any facts stating a claim for relief on behalf of Jessie Conerly and have failed to plead that he sustained damages. Defendants are correct. In Louisiana, shareholders and officers of a corporation do not have a personal right to recover for acts causing damage to the corporation. *See, e.g., Joseph v. Hospital*

13

*Service Dist. No. 2*, 939 So.2d 1206, 1215(La. 2006)(cause of action for breach of contract "belonged solely to the corporation," not shareholders or officers); *Glod v. Baker*, 851 So.2d 1255, 1264 (La. Ct. App. 2003)("The rule in Louisiana is that a shareholder has no separate or individual right of action...for wrongs committed against of causing damage to the corporation."); *Cook v. Hibernia Nat'l Bank*, 816 So.2d 901, 905 (La. Ct. App. 2001)(shareholder had no cause of action where damages "not separable from that sustained by the corporation itself."); *Joe Conte Toyota, Inc. v. Toyota Motor Sales, USA, Inc.*, 689 So.2d 650, 654 (La. Ct. App. 1997)("Shareholders and officers of a corporation...do not have a personal right to sue in Louisiana to recover for acts against, or causing damage to the corporation.").  Plaintiffs' complaint fails to allege *any* damage to Jessie Conerly.  Plaintiffs request leave to amend their complaint to correct this omission, but any amendment would be futile.  *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)(holding that amendment is futile if the amended complaint would fail to state a claim upon which relief could be granted).  Jessie Conerly has no cause of action as either a shareholder or an officer for damage to Conerly Corp. as a corporate entity, and plaintiffs have stated no facts indicating that Jessie Conerly suffered any separable injury to himself.  As

14

a result, Jessie Conerly's claims against defendant are
dismissed.

    *v.    AmSouth/Regions' Liability for Carroll's Acts*

    AmSouth/Regions argues that plaintiffs' "allegations of
breach of contract...and detrimental reliance are not encompassed
within the universe of employee offenses for which an employer
may be liable" under La. Civ. Code art. 2320, because these
claims are not torts.  While AmSouth/Regions is technically
correct that it cannot be vicariously liable under art. 2320 for
the non-tortious conduct of its employee, it remains primarily
liable for the acts of its mandatary acting within the scope of
his mandate under La. Civ. Code art. 3020 ("The principal is
bound to perform the contract that their mandatary, acting within
the limits of his authority, makes with a third person"); *M.
Hayes & Assoc. Realty Co., LLC v. Moliere*, 982 So.2d 173, 178
(La. Ct. App. 2008)("[U]nder Louisiana law governing mandataries,
it is the principal (the corporation) who is liable to third
parties, rather than the agent or mandatary (the officer or
director)(citation omitted); *Bolding v. Eason Oil Co*., 170 So.2d
883, 893 (La. Ct. App. 1965)("Officers and directors are
mandataries of the corporation")(*citing Raymond v. Palmer*, 35 La.
Ann. 276 (La. 1883)).  As stated above, plaintiffs' have alleged
that "Carroll was fully authorized by AmSouth/Regions Bank to act

15

on its behalf in all respects to Beechgrove Phase II." These
facts sufficiently allege a principal-mandatary relationship such
that AmSouth would be liable for Carroll's actions with respect
to the Beechgrove project.

**B. Plaintiffs' Claims**

    *i. Breach of Contract*

    Plaintiffs have alleged sufficient facts to state a claim
for breach of contract under Louisiana law.  Article 1906 of the
Louisiana Civil Code states that "[a] contract is an agreement by
two or more parties whereby obligations are created, modified, or
extinguished."  "A contract is formed by offer and acceptance."
La. Civ. Code art. 1927.  "The object of a contract must be
determined at least as to its kind."  La. Civ. Code art. 1973.
Further, "[a]n obligation cannot exist without a lawful cause,"
as "[c]ause is the reason why a party obligates himself." La.
Civ. Code arts. 1966, 1967.

    Reading the facts in the light most favorable to the
plaintiffs, plaintiffs have alleged that Carroll, on behalf of
AmSouth/Regions, offered to pay for all work that was approved by
the architect.  The alleged facts indicate that AmSouth/Regions
had cause to enter into the agreement:  to ensure that work
continued on a project it was financing, because a completed
project was much more valuable collateral to AmSouth/Regions than

16

unfinished construction.  Plaintiffs allegedly accepted by performance, which is a valid means of acceptance under Louisiana law.  *See, e.g., Rogers v. Horseshoe Entertainment*, 766 So.2d 595, 601 (La Ct. App. 2000)(*citing* La. Civ. Code art. 1939).  Carroll later notified plaintiffs that they would not receive further payments for work performed.  These facts are sufficient to state a claim.

Defendants argue that plaintiffs' breach of contract claim must be dismissed because plaintiffs, in essence, are claiming that AmSouth/Regions guaranteed Beechgrove's performance and in Louisiana a contract for suretyship requires a writing.  "[T]he plaintiff is the 'master of the complaint," *Holmes Group, Inc v. Vornado Air Circulation*, 535 U.S. 826, 831 (2002), however, and plaintiffs have not brought a claim under suretyship law.  Plaintiffs have sued defendants for breach of an oral contract and have alleged facts stating a claim for breach of contract.  The lack of a writing is of no significance.

   ii.  *Bad Faith Breach of Contract*

In addition, plaintiffs have sufficiently alleged bad faith on the part of AmSouth/Regions.  "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."  La. Civ. Code. art. 1997.  Bad faith "generally implies actual or constructive fraud

17

or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties." *Board of Sup'rs of Louisiana State University v. Louisiana Agricultural Finance Auth.,* 984 So.2d 72, 80 (La. Ct. App. 2008).  Plaintiffs have alleged that "AmSouth and/or Bill Carroll did not intend to pay the sums pursuant to pay application numbers 32, 33, and 34." This coupled with plaintiffs' allegations that Carroll made "explicit representations that The Conerly Corporation would be paid in full for its work" and threatened to remove Conerly Corp. if work was not done faster, is sufficient to state a claim for bad faith.  *See Nat'l Bldg. & Contracting Co., v. Alerion Bank & Trust Co.*, 772 So.2d 938, 943 (La. Ct. App. 2000)(Bank acted in bad faith by making assurances to construction company that caused it to continue work and incur expenses, even though loan funds were depleted); *cf. David Y. Martin, Jr., Inc. v. Heublein, Inc.*, 943 F.Supp. 637, 641 (E.D.La. 1996)(Distributor acted in bad faith by misrepresenting that a distributorship agreement would be continued when it had already decided the agreement would be terminated).

    *iii.  Negligence and Negligent Misrepresentation.*

     Plaintiffs assert that the facts alleged in the complaint state claims for negligence and negligent misrepresentation.  To state a claim for negligence in Louisiana, plaintiffs must allege

18

the following: i)the conduct in question was a cause-in-fact of the resulting harm; ii) the defendants owed the plaintiffs a duty to protect the plaintiffs from the type of harm arising from the conduct; iii) the defendants violated the duty owed; and iv) the defendants' duty is within the scope of the risk. *Guidry v. Bank of LaPlace*, 740 F.Supp. 1208, 1217 (E.D.La. 1990)(citing *Mart v. Hill*, 505 So.2d 1120 (La.1987)).  Negligent misrepresentation is a species of negligence in Louisiana, and courts employ roughly the same test for liability used in the standard duty/risk analysis. *See In re Succession of McKnight*, 768 So.2d 794, 798 (La. Ct. App. 2000)("Appellate courts have integrated the cause of action for negligent misrepresentation...into the duty-risk negligence analysis").

The only contested element of plaintiffs' claims is whether AmSouth/Regions owes a duty to plaintiffs.  Defendants argue no. "Whether a duty exists, as well as the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties." *Brooks v. Transit Management of Southeast Louisiana*, No. 2007-C-1367, 2008 WL 4401426, at *4 (La Ct. App. 9/24/2008)(*citing Joseph v. Dickerson*, 754 So.2d 912, 916 (La. 2000)).  Defendants cite *Guidry v. Bank of LaPlace*, 740 F.Supp. 1208, 1218 (E.D.La. 1990), for the proposition that "a bank...owes absolutely no duty, fiduciary or otherwise, towards

third persons with whom a ...customer does business." In *Guidry*, the plaintiff was on the losing end of a ponzi scheme and tried to recover against the bank that maintained the accounts used in the fraud. The court rejected the argument that the bank had a duty to "discover and prevent [the] Ponzi scheme," and stated that "banks do not have a duty to third parties to investigate a customers' underlying transactions." *Id.* at 1219. According to the court, "that would result in an unreasonable burden upon, and disruption of, regular and normal banking transactions." *Id.* (quotes and citations omitted).

Given the nature of AmSouth/Regions' alleged relationship with plaintiffs, the Court finds that *Guidry* does not control this case. The court in *Guidry* emphasized that the plaintiff "was merely a business associate of a depositor," and the bank's involvement with the ponzi scheme was limited to the use of a bank checking account to further the fraud. *Id.* By contrast, plaintiffs allege that AmSouth/Regions had repeated interactions with Conerly Corp. in which Carroll monitored progress on the project, personally assured that payments under the contract would be made and even threatened to replace Conerly Corp. if work was not expedited. According to plaintiffs' allegations, AmSouth/Regions did much more than provide a checking account to a client who then used it for illegitimate purposes; it financed

a project over which it allegedly maintained a great deal of
control.  AmSouth/Regions' financial interest was at stake in
seeing that the project was completed, because it was collateral
for its loan, and AmSouth/Regions willingly involved itself in
the project to protect that interest.  As such, the Court does
not find that imposing a duty on AmSouth/Regions "would result in
an unreasonable burden upon, and disruption of, regular and
normal banking transactions."  Allegedly, AmSouth/Regions had
*already* chosen to significantly involve itself in Conerly Corp.'s
work.  Having made that choice, AmSouth/Regions was required to
exercise ordinary care. *See Boyte v. First Nat. Bank of Crossett*,
No. 07-31057, 2008 WL 2660770 (5th Cir. 2008)(per curiam)(By
representing its financial relationship to a client for third-
party to rely on, bank assumed a duty to provide correct
information); *Cypress Oilfield Contractors v. McGoldrick Oil*, 525
So.2d 1157, (La. Ct. App. 1988)(By volunteering information that
borrower was solvent to third-party, bank assumed a duty to
insure that the information was correct).

   *iv. Unjust Enrichment*

   The elements of an unjust enrichment claim are as follows:
There must be i) an enrichment of the defendant; ii) an
impoverishment of the plaintiff; iii) a connection between the
enrichment and the resulting impoverishment; iv) an absence of

justification or cause for the enrichment and impoverishment; and v) there must be no other remedy at law available to plaintiff. *Baker v. Maclay Properties Co.*, 648 So.2d 888 (La. 1995).

Plaintiffs have other and more obvious remedies at law that preclude their claim for unjust enrichment.  Plaintiffs have alleged several other theories of recovery against defendants in this lawsuit, and plaintiffs may bring a suit for breach of contract against Beechgrove, the party with which plaintiffs undisputedly entered into a contract for the services performed. *See Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*, 817 So.2d 427, 438 (La. Ct. App. 2002) ("[W]here a contract exists, there can be no recovery in *quantum meriut*"); *Fagot v. Parsons*, 958 So.2d 750, 753 (La. Ct. App. 2007)(dismissing unjust enrichment claim where there was "two other remedies that d[id] not involve" plaintiff) and *Board of Sup'rs of Louisiana State University v. Louisiana Agr. Finance Authority*, 984 So.2d 72, 81 (La. App. Ct. 2008)(no cause of action for unjust enrichment where plaintiff had claim against third-party under Louisiana Public Works Act).

Plaintiffs assert that they have pled their claims against defendants in the alternative, so dismissal on the grounds that they have another remedy at law is improper.  The merit of plaintiffs' other claims is irrelevant.  "It is not the success

22

or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 2008).  That plaintiffs have pled their claims against AmSouth/Regions in the alternative also does not change that plaintiffs have a cause of action for breach of contract against Beechgrove.  Unjust enrichment is a remedy of last resort under Louisiana law and "is only applicable to fill a gap in the law where no express remedy is provided." *Board of Sup'rs of Louisiana State University*, 984 So.2d at 81.  Plaintiffs have several other remedies at law for their alleged "unjust impoverishment," both against defendants and against Beechgrove. Plaintiffs therefore fail to state a claim for unjust enrichment.

 *v.  Detrimental Reliance*

 A cause of action for detrimental reliance requires plaintiffs to prove three elements: i)a representation by conduct or word; ii) justifiable reliance; iii) a change in position to the plaintiff's detriment because of the reliance.  *Suire v. Lafayette City-Parish Consol. Government*, 907 So.2d 37, 59 (La. 2005); *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 871 So.2d 380, 393 (La. Ct. App. 2004); *Babkow v. Morris Bart, PLC*, 726 So.2d 423, 427 (La. Ct. App. 1998).

 Defendants challenge the second element.  Specifically,

defendants state that even if Carroll made a promise, plaintiffs have not alleged facts indicating that defendants should have known plaintiffs would rely or that plaintiffs' reliance was reasonable.  "It would be illogical and commercially irresponsible for a contractor and a bonding company to rely on assertions by a bank employee that the bank would make loan disbursements directly to the contractor," defendants assert, especially when "Conerly Corp. obtained a labor and material payment bond to guarantee completion" of the project. Defendant's argument amounts to an assertion that plaintiffs' reliance was unreasonable as a matter of law.  Defendants do not provide any case, however, supporting their argument that plaintiffs' reliance was *per se* unreasonable.  As discussed in more detail above, plaintiffs have alleged that AmSouth/Regions held a great deal of power over the Beechgrove project.  In light of this alleged relationship, the Court does not find plaintiffs' reliance on defendants' alleged statements unreasonable as a matter or law.

*vi.  Intentional Misrepresentation*

Plaintiffs "allegation of intentional misrepresentation is essentially an allegation of fraud" implicating the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Unimobil 84, Inc.*, 797 F.2d at 217.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)(quoting Fed. R. Civ. P. 9(b)).  "This Court interprets Rule 9(b) strictly, requiring a plaintiff [who pleads] fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (citations omitted).  "Put simply, Rule 9(b) requires the complaint to set forth the who, what, where, and how of the events at issue." *Id.* (citations and quotes omitted).

The second sentence of Rule 9(b) "relaxes the particularity requirement for conditions of the mind such as scienter: 'Malice, intent, knowledge, and other  conditions of the mind may be alleged generally." *Id.* (citations omitted). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy rule 9(b)." *Id.* (citations omitted).  "The Plaintiffs must allege specific facts supporting an inference of fraud." *Id.*

25

(citations omitted).

Under Louisiana law, to prevail on a claim of intentional misrepresentation plaintiffs must show (i) a misrepresentation of a material fact, (ii) made with the intent to deceive, and (iii) causing justifiable reliance with resultant injury." *Guidry v. United States Tobacco Co.,* 188 F.3d 619, 627 (5th Cir. 1999) (*citing* La. Civ. Code art. 1953; other citations omitted). Plaintiffs have failed to plead these elements with the particularity required by Rule 9(b).  Plaintiffs have not alleged which representations by Carroll were fraudulent, including when or where they occurred.  Because plaintiffs have not shown which allegations by Carroll were fraudulent, they have also failed to allege "specific facts" giving rise to an inference of fraud in any particular instance.  Plaintiffs have sought leave to amend their complaint to amend these deficiencies, and that leave is GRANTED.

## IV.  Conclusion

For the reasons stated above, all claims by Jessie Conerly are dismissed; defendant Carroll's motion to dismiss is GRANTED on all claims except for Conerly Corp.'s claim for intentional misrepresentation; defendant AmSouth/Regions' motion to dismiss is GRANTED with respect to Conerly Corp.'s unjust enrichment claim, and DENIED with respect to all other claims.  In addition, plaintiffs are GRANTED leave to amend their complaint to plead intentional misrepresentation with particularity.

New Orleans, Louisiana, this 20th day of November, 2008

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE